No. 2587

Second Circuit

GREEN ET AL. v. INTERNATIONAL ORDER OF TWELVE, KNIGHTS AND DAUGHTERS OF TABOR

(April 5, 1929. Opinion and Decree.)
(May 8, 1929. Rehearing Refused.)

Murff and Perkins, of Shreveport, attorneys for plaintiffs, appellees.

Charles M. Roberson, of Shreveport, attorney for defendant, appellant.

REYNOLDS, J. This is a suit by Emmet Green, Isaac Green, Ernest Green and Ollie Green as the only children and sole heirs of Isaac Green and his wife Gracie Green, both deceased, against the International Order of Twelve of Knights and Daughters of Tabor, a mutual benefit society, to recover judgment for the sum of $375.00, or $93.75 for each of them, upon a benefit certificate issued by defendant to Isaac Green under date of September 15, 1915, whereby defendant promised to pay $75.00 to each of the plaintiffs upon the death of Isaac Green, provided he was and had been for a period of four consecutive months immediately preceding his death and at the date of his death in good standing.

The defense was that the deceased was not in good standing as a member of the defendant association at the time of his death.

On these issues the case was tried and there was judgment in favor of the plaintiffs and against the defendant in the sum of $300.00 with legal interest thereon from judicial demand and defendant appealed.

## OPINION.

The burden of proving that the deceased was not in good standing as a member of the society at the time of his death and for four months immediately preceding that event was on the defendant and defendant failed to establish the fact.

It was judicially admitted that the dues of the deceased to the defendant had been paid up to the last day of the month of May, 1924, and that the deceased was in good standing and the certificate in full force on that date. Isaac Green died July 17, 1924. Failure to pay dues after the month of May did not automatically put him in bad standing as a member of the society. The certificate provides, amongst other things, that:

"It is further specially stipulated, provided and agreed that any member who is suspended, shall, after said period of suspension continuously for two consecutive months, ipso facto forfeit and surrender any and all rights and claims hereunder."

This provision contemplates some affirmative action on the part of the association amounting to suspension until when the two months do not begin to run; and until the two months have run the certificate continues in force.

John Sumlin, the chief scribe of the association, was asked:

"Q. Did you notify Isaac Green at any time as to his financial standing in the lodge?"

And he answered:

"A. I did on the first Sunday in July —the month that he died. He was at church."

And he said:

"When I notified him, I said: 'Isaac, you should straighten that out and if you haven't got the money you ought to borrow it and pay up, because you will be unfinancial before the next lodge meeting."

This testimony indicates that the chief scribe, so far as his own authority as an officer of the association extended, did not then consider the insured to be suspended.

It is laid down in Ruling Case Law, volume 14, page 976, that where the policy or by-laws of an association such as defendant is, expressly or impliedly require some affirmative action on the part of the insurer before a forfeiture can be declared that mere non-payment of dues does not work a forfeiture of membership. As stated, no such affirmative action was taken by the insurer in respect of the certificate sued on and consequently it was in full force and effect at the time of the insured's death.

We find no error in the judgment appealed from and accordingly it is affirmed.